OPINION OF THE COURT
 

 Levine, J.
 

 Defendants own and operate a commercial farm in the Town of Lysander, in an “agricultural district” created pursuant to Agriculture and Markets Law § 303. This case arises from defendants’ attempt in 1999 to install several single-wide mobile homes for housing migrant workers on the farm. The mobile homes do not comply with a Town zoning ordinance that “all one-story single family dwellings” have a minimum living area of 1,100 square feet (Town Zoning Code § 139-56 [A]).
 

 The central issue before us is whether the zoning ordinance, as applied to defendants’ installation of mobile homes to house migrant farm workers, is superseded by Agriculture and Markets Law § 305-a (1) (a). That statute provides:
 

 “1. Policy of local governments, a. Local governments, when exercising their powers to enact and administer comprehensive plans and local laws, ordinances, rules or regulations, shall exercise these powers in such manner as may realize the policy
 
 *562
 
 and goals set forth in this article, and
 
 shall not unreasonably restrict or regulate farm operations within agricultural districts
 
 in contravention of the purposes of this article unless it can be shown that the public health or safety is threatened” (emphasis supplied).
 

 The statute defines “[f]arm operation [s]” as “the land and on-farm buildings, equipment and practices which contribute to the production, preparation and marketing of crops, livestock and livestock products as a commercial enterprise” (Agriculture and Markets Law § 301 [11]).
 

 In 1998, the Town initially granted defendants a temporary building permit for two mobile homes, but refused to extend the permit in 1999 and disapproved defendants’ permit application to site additional mobile homes on the farm, relying solely on Town Zoning Code § 139-56 (A). The Town then commenced this action for an injunction precluding defendants from using the mobile homes to house migrant workers and directing removal of the structures unless defendants obtained the necessary building permits.
 

 Defendants alleged, as an affirmative defense, that the zoning ordinance unreasonably restricted farm operations within the meaning of Agriculture and Markets Law § 305-a (1) (a) and that the Town failed to show that its restriction on mobile homes was necessary to protect the public health or safety. They also sought, in a counterclaim, an order directing the Town to issue building permits and certificates of occupancy for the mobile homes. Thereafter, defendants moved for summary judgment dismissing the complaint. In support of their motion, they submitted a letter addressed to the Town from the Department of Agriculture and Markets, which stated that the “Department has consistently viewed mobile homes used for farmworker residences as protected ‘on-farm buildings’ ” and that it viewed application of the Town’s zoning code in defendants’ case as an unreasonable restriction on farm operations.
 

 Supreme Court denied defendants’ motion for summary judgment and granted summary judgment to the Town, permanently enjoining defendants from using mobile homes without building permits and certificates of occupancy. The court reasoned that Agriculture and Markets Law § 305-a (1) (a) did not “create an exemption from local zoning authorities or ordinances for all ‘farm operations’ ” and, specifically, that the statute did not provide any protection to “farm residential build
 
 *563
 
 ings,” including mobile homes. The Appellate Division affirmed for “reasons stated” at Supreme Court (277 AD2d 1055). We granted leave to appeal and now reverse.
 

 The Legislature enacted article 25-AA of the Agriculture and Markets Law in 1971 for the stated purposes of protecting, conserving and encouraging “the development and improvement of [this State’s] agricultural lands” (L 1971, ch 479, § 1). At that time and again in 1987 (L 1987, ch 774, § 1), the Legislature specifically found that “many of the agricultural lands in New York state are in jeopardy of being lost for any agricultural purposes” due to local land use regulations inhibiting farming, as well as various other deleterious side effects resulting from the extension of nonagricultural development into farm areas (Agriculture and Markets Law § 300).
 

 To foster the socio-economic vitality of agriculture in New York, the Legislature gave county legislative bodies the power to create “agricultural districts”
 
 (see, id.,
 
 § 303). Lands falling within those “agricultural districts” may be entitled to various statutory protections and benefits. As is relevant here, Agriculture and Markets Law § 305-a (1) (a) mandates that, when exercising their powers to regulate land use activities, local governments must do so in a manner consistent with the policy objectives of article 25-AA. Thus, the statute directs that local governments “shall not unreasonably restrict or regulate farm operations within agricultural districts in contravention of the purposes of this article unless it can be shown that the public health or safety is threatened”
 
 (id.,
 
 § 305-a [1] [a]).
 

 In this case, as previously noted, the Commissioner of Agriculture and Markets, who appears
 
 amicus curiae
 
 on defendants’ behalf, has concluded that “mobile homes used for farmworker residences [are] protected ‘on-farm buildings.’ ” Rejecting the Commissioner’s position, the courts below concluded that use of mobile homes to house migrant farm workers does not fall within the definition of “farm operation.” Initially, the Legislature defined the phrase “[f]arm operation” as “the land used in agricultural production, farm buildings, equipment and
 
 farm residential buildings”
 
 (L 1992, ch 534, § 1 [emphasis supplied];
 
 see also,
 
 L 1995, ch 235, § 1). In 1997, the Legislature amended the definition to mean “the land and
 
 on-farm buildings,
 
 equipment, and practices which contribute to the production, preparation and marketing of crops, livestock and livestock products as a commercial enterprise” (L 1997, ch 357, § 2 [emphasis supplied]). The courts below reasoned that, by deleting the phrase “farm residential buildings,” the
 
 *564
 
 Legislature intended to limit the definition of “farm operation” to non-residential buildings, thereby divesting those buildings of the protections of Agriculture and Markets Law § 305-a (1) (a). We disagree.
 

 As urged by defendants and the Commissioner, the literal language of the definition does not exclude “farm residential buildings” from the protective reach of the statute. To the contrary, Agriculture and Markets Law § 301 (11) makes plain that
 
 all
 
 buildings located “on-farm” may be considered part of a “farm operation” if they otherwise satisfy the requirements of the statute
 
 (see, id.,
 
 § 301 [11]). Moreover, the legislative history supports the Commissioner’s view by explaining that the statute was amended in 1997 to correct technical errors and to
 
 strengthen
 
 — not limit — the protections against unreasonably restrictive local laws and ordinances
 
 (see,
 
 Senate Mem in Support, Bill Jacket, L 1997, ch 357, at 3, reprinted in 1997 McKinney’s Session Laws of NY, at 2345 [amendments were needed “to correct technical errors and improve the Department’s ability to effectively administer the law”]; Senate Sponsor John R Kuhl, Jr., Letter in Support, Bill Jacket, L 1997, ch 357 [the bill “incorporates several technical changes * * * proposed by the Department (of Agriculture and Markets)” and is intended “to further improve and strengthen the law”]; Assembly Sponsor William L. Parment Letter in Support, Bill Jacket, L 1997, ch 357 [“This legislation will improve the administration of the Agricultural Districts Program by strengthening the * * * unreasonably restrictive local ordinance provisions * * * and making various technical corrections”]).
 

 The Commissioner also concluded that “the Town of Lysander’s Zoning Code, insofar as it
 
 prohibits
 
 the siting of mobile homes having an area of less than 1,100 square feet for farm labor housing on farm operations * * * unreasonably restricts such farm operations, including Paul Hafner Farms.” According to the Commissioner,
 

 “Frequently, farmers rely on mobile home housing for their farm laborers to accommodate the long work day, seasonal housing needs and to address the real shortage of rental housing in rural areas. Local government prohibitions or restrictions on the use of mobile homes can significantly impair the viability of farm operations.” ,
 

 The Commissioner’s view in this regard is entitled to deference.
 
 *565
 
 Where, as here, the “interpretation of a statute or
 
 its application
 
 involves knowledge and understanding
 
 of
 
 underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute”
 
 (Kurcsics v Merchants Mut. Ins. Co.,
 
 49 NY2d 451, 459 [emphasis supplied];
 
 see also, Matter of Jennings v New York State Off. of Mental Health,
 
 90 NY2d 227, 239).
 

 Finally, the Town failed to make any evidentiary showing that the statutory exception to the ban on unreasonable regulations of farm operations
 
 applied
 
 — i.e., that an
 
 absolute
 
 ban on single-wide mobile homes was needed because “the public health or safety [was] threatened” (Agriculture and Markets Law § 305-a [1] [a]). Therefore, we agree with defendants and the Commissioner that defendants were entitled to summary judgment dismissing the Town’s complaint. The Town’s remaining arguments are without merit.
 

 We note that, as a result of our reversal, defendants’ counterclaim for an order directing the Town to issue building permits and certificates of occupancy — which had been rendered academic by the rulings below — apparently now remains pending.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, defendants’ motion for summary judgment granted and the case remitted to Supreme Court for further proceedings in accordance with this opinion.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Order reversed, etc.