■ In the Matter of Carol S., Alleged to be an Incapacitated Person. Christine T., Appellant; Mary AA. et al., Respondents. [890 NYS2d 209]—

Lahtinen, J.

The strained relationships of the surviving children of Carol S. (hereinafter decedent) have resulted in repeated recourse to the courts. Briefly stated, in late 2003, petitioner began residing with decedent, her elderly mother, and, in April 2005, she petitioned pursuant to Mental Hygiene Law article 81 to be appointed guardian of the person and property of decedent. Respondents, two of petitioner's sisters, opposed the petition. In

September 2005, Supreme Court (Bradley, J.) appointed petitioner as temporary guardian of the person of decedent and appointed respondent Mary AA. as temporary guardian of decedent's property. Mary AA. was unable to complete a final accounting of decedent's property allegedly because she discovered, immediately after decedent's death in October 2006, that petitioner had moved and/or secreted significant portions of decedent's property. A series of orders ensued in which Supreme Court (O'Connor, J.) directed, among other things, that petitioner return the property and do so in a manner that would allow Mary AA. to prepare a final accounting.

Alleging repeated noncompliance with these orders, respondents moved for an order of contempt. Following two days of hearings commencing in December 2007, at which all four surviving children of decedent testified, Supreme Court rendered a written decision describing the "long and tortured history in which there has been a lack of compliance by [petitioner]." The court found the testimony of Mary AA. and respondent Inez BB. to be credible and concluded that petitioner had disobeyed clear mandates of its prior orders. As a penalty, the court directed petitioner to pay the counsel fees ($40,080.20) and costs ($4,569.21) incurred by respondents in seeking to compel petitioner's compliance with the court's orders. Petitioner appeals.

The elements of civil contempt include a lawful judicial order in effect that expresses an unequivocal mandate, disobedience of the order, knowledge of the order by the disobeying party and prejudice sustained by the other party (see *McCain v Dinkins*, 84 NY2d 216, 226 [1994]; *Matter of McCormick v Axelrod*, 59 NY2d 574, 583 [1983], *amended* 60 NY2d 652 [1983]). The credibility determinations of the trial court are accorded deference (see *Matter of Omahen v Omahen*, 64 AD3d 975, 977 [2009]; *Matter of Rebecca O. v Todd P.*, 309 AD2d 982, 984 [2003]). "[C]ounsel fees and disbursements may be awarded against the contemptuous party" (*Matter of Lembo v Mayendia-Valdes*, 293 AD2d 789, 790 [2002]; see Judiciary Law § 773).

We are unpersuaded by petitioner's argument that Mary AA.'s obligation to inventory decedent's property terminated upon decedent's death and, thus, could not provide a basis for the finding of contempt. "The death of an incapacitated person does not require a guardian's immediate discharge . . . where . . . there is a dispute regarding the preservation of the incapacitated person's property pending distribution" (*Matter of Rose BB.*, 262 AD2d 805, 807 [1999], *appeal dismissed and lv dismissed* 93 NY2d 1039 [1999] [citations omitted]). The duties of

the guardian of the incapacitated person's property to preserve and then deliver such property to the person legally entitled thereto implicates the necessity of an accurate inventory (*see* Mental Hygiene Law § 81.20 [a] [6] [ii], [v]). Mary AA. was attempting to complete such an inventory and her efforts were thwarted by petitioner's repeated failure to adhere to court orders. Under the circumstances, it was not inappropriate for Supreme Court to retain jurisdiction and resolve the issues implicated by petitioner's actions (*see Matter of Burns*, 287 AD2d 862, 863 [2001]).

The fact that Mary AA. had been able to complete an inventory by the time the contempt hearing commenced in December 2007 does not, as urged by petitioner, require reversal. By such time there had been repeated noncompliance with court orders by petitioner resulting in legal expenses incurred by Mary AA. in her efforts to compel petitioner's compliance. In short, the elements of contempt existed and the belated compliance did not deprive the court of the power to consider the contempt, as well as an appropriate penalty therefor (*see Ferraro v Ferraro*, 272 AD2d 510, 512 [2000] ["delayed compliance does not render the contempt proceeding academic"]).

We find no merit in petitioner's assertion that the underlying orders were ambiguous. Petitioner's proffered explanation that she was acting consistent with the orders because she was merely attempting to secure the property from potential theft was not credited by Supreme Court and we defer to that credibility determination (*see Matter of Rebecca O. v Todd P.*, 309 AD2d at 984). Accepting the credibility determinations of Supreme Court, the record reveals that all the elements of civil contempt were adequately established.

With respect to the amount of counsel fees and costs awarded, that issue was not raised before Supreme Court and thus is not properly preserved for our review (*see generally DeMeo v DeMeo*, 281 AD2d 662, 664 [2001]). Supreme Court stated in its decision that, despite being afforded two opportunities to challenge those amounts, petitioner submitted no opposition thereto. The remaining issues have been considered and are either unpreserved or unavailing.

Peters, J.P., Spain, Kane and Malone Jr., JJ., concur. Ordered that the order and judgment is affirmed, without costs.